UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA MUNROE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1942 CDP |
| ) | |
| CONTINENTAL WESTERN ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Joshua Munroe was employed as a driver for a trucking company when he was involved in a serious accident.  He and his wife were covered under the company's insurance policy for the tractor-trailer that he was operating.  The Monroes brought suit against the truck drivers that were responsible for the accident and their employer, and they received a settlement from that insurance company.  Because that recovery was insufficient given the severity of Joshua Munroe's injuries, plaintiffs sought underinsured motorist coverage from their own company's insurance provider.  After a dispute arose regarding the coverage limit under the policy for underinsured motorists, plaintiffs brought this suit.  Defendant now moves for summary judgment, seeking a declaration that its maximum liability under the policy is $500,000.  Because the undisputed evidence demonstrates that the insurance policy is ambiguous as to the coverage limit, I

conclude that defendant's maximum liability under the policy is $2,000,000, and I will therefore deny defendant's motion for partial summary judgment.

## Background

From October 1, 2006 through October 1, 2007, Rollet Bros. Trucking Co. was insured by defendant Continental Western Insurance Company ("Continental") under Policy #2646554-22.  The policy provided coverage for several tractor-trailers owned by Rollet, which were operated by individuals employed as drivers for the company.

On November 6, 2006, Joshua Munroe was employed by Rollet Bros.  He was driving a 2000 International Harvester tractor-trailer that was owned by Rollet Bros. and covered under the insurance policy.  That morning, he was driving in the northbound land of Route #1 in Edgar County, Illinois.  Three other tractor-trailers, owned by Wilkens Trucking, were driving in a row in the southbound lane.  The middle tractor-trailer swerved across the center line into the northbound lane, directly into Munroe's path.  The middle tractor-trailer attempted to return to the southbound lane, but Munroe's tractor-trailer struck its rear tandem wheels.  This impact caused Munroe to collide head-on with the third tractor-trailer.  Munroe's vehicle then caught fire, and it was completely destroyed.

As a result of the accident, Munroe suffered extremely serious bodily injuries.  These included severe burns throughout his body, several broken bones,

and various other injuries.  He has undergone several surgeries for his burns and broken bones, and his medical bills were in excess of $550,000.

Plaintiffs filed a lawsuit against Wilkens Trucking and the three drivers involved in the accident, claiming that they were negligent.  Joshua Munroe sought damages for his injuries, and his wife, Tiffany Munroe, asserted a claim for lack of consortium.  Those defendants were insured by Auto-Owners Insurance Company, under a policy that included a $1,000,000 limit.  The plaintiffs accepted a settlement from Auto-Owners of $1,000,000 and entered into a partial release that allowed them to litigate the issue of whether they were eligible for any additional insurance.  The United States District Court for the Southern District of Illinois and the Seventh Circuit Court of Appeals held that no additional insurance was available.

The Continental insurance policy issued to Munroe's employer Rollett Bros. includes underinsured motor vehicle coverage.  The Munroes brought this suit seeking recovery under those provisions.  Defendant now moves for summary judgment, seeking a declaration that its maximum coverage under the policy for underinsured motor vehicles is $500,000.  Plaintiffs argue that the policy actually provides $2,000,000 for each of them, and that they each have a claim against each of the three underinsured motorists (the Wilkens drivers), for a total of $12,000,000.

## The Insurance Policy

Several provisions of the insurance policy are at issue regarding the underinsured motor vehicle coverage. The policy lists the named insured as Rollet Bros. Trucking Company, and the parties agree that both plaintiffs are covered as insured individuals under the policy. The schedule of coverages shows a bodily injury liability coverage limit of $2,000,000. It also shows, among other things, underinsured motorist coverage with a limit of $500,000. Two endorsements listed on the coverage form relate directly to the underinsured motorist coverage: CW1796 (01-01) and CA3104 (04-01).

The first endorsement is entitled "Selection/Rejection of Underinsured Motorist Coverage." This includes the following language:

> Under Missouri Insurance Law (379.203), Underinsured Motorist Coverage is optional. The insured named in the policy may select a limit of Underinsured Motorist Coverage *lower than the bodily injury liability coverage limit* in the policy, but not less than the state financial responsibility limit or the insured named in the policy may choose to reject Underinsured Motorist Coverage.

(Emphasis added). The insured then must check one of the following choices: to reject underinsured motorist coverage, to purchase underinsured motorist coverage at the state limit, or to purchase underinsured motorist coverage of a specific amount, which may be less than the policy bodily injury limit (here $2,000,000). In Exhibit 1 to defendant's motion, described as a copy of the policy, this form was blank. However, in Exhibit 1 to its reply memorandum, defendant attached a form

that was completed by someone named Susie Fulton on December 8, 2006, which showed a selection of $500,000 in underinsured motorist coverage.

The second relevant endorsement is labeled "Missouri Underinsured Motorists Coverage." It shows a "limit of insurance" of $500,000 for each "accident." The policy defines an accident as including "continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended." Additionally, it defines an "underinsured motor vehicle" as a "vehicle or 'trailer' for which a 'bodily injury' liability bond or policy applies at the time of an accident but the amount paid for 'bodily injury' under that bond or policy . . . is not enough to pay the full amount the 'insured' is legally entitled to recover as damages." Under the coverage section of the endorsement, the policy states:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle.

A later section of that endorsement, entitled "Limit of Insurance," states the following: "Regardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or vehicles involved in the 'accident,' the most we will pay for all damages resulting from any one 'accident' is the limit of Underinsured Motorists Coverage shown in the Schedule or Declarations."

## **Discussion**

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).

Under Missouri law, which applies to this diversity case, the rules governing the interpretation of insurance polices are well settled.  *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998) (en banc).  A court must apply the general rules of contract construction when interpreting an insurance policy, because insurance policies are contracts.  *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007) (en banc).  When interpreting a contract, a court must give the contract's terms their plain and ordinary meaning, unless a term is ambiguous.  *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997) (en banc); *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo.

1993) (en banc).  A term's plain and ordinary meaning is the meaning that an average layperson would give the term.  *Farmland Indus., Inc.*, 941 S.W.2d at 508.  In addition, a court "should not interpret policy provisions in isolation but rather evaluate policies as a whole."  *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009).  Finally, in interpreting an insurance contract, the court must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant."  *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008).

A term is ambiguous only if the terms are "reasonably and fairly open to different constructions, and there is duplicity, indistinctness, or uncertainty of meaning."  *Miller's Classified Ins. Co. v. French*, 295 S.W.3d 524, 526 (Mo. Ct. App. 2009) (citations and internal quotation marks omitted).  When an ambiguity exists in an insurance policy, the court must interpret the policy in favor of the insured.  *Todd*, 223 S.W.3d at 160.  If, however, the policy is unambiguous, the court must enforce the contract's terms as written.  *Id.*

The starting point for this analysis is determining whether the actions causing the plaintiffs' injuries constituted one accident or multiple accidents.  Defendants argue that the series of events constituted one "accident" under the policy, so as to make the "limit of coverage" section applicable.

There are two prevailing doctrines for interpreting an "accident." Under the "cause" approach, "an inured's single act is considered the accident from which all claims flow." *Kansas Fire & Cas. Co. v. Koelling*, 729 S.W.2d 251, 252 (Mo. Ct. App. 1987). Under the "effect" approach, "each claim arising out of an insured's act is considered a separate accident." *Id.* Determining which approach to use requires interpretation of the language "in a manner that is consistent with the reasonable expectations, objectives, and intent of the parties." *Am. Family Mut. Ins. Co. v. Bramlett*, 31 S.W.3d 1, 4 (Mo. Ct. App. 2000).

The limit of coverage paragraph in this policy states that the coverage limit applies no matter how many vehicles, claims, or insureds are involved in a single accident. This clearly evidences an understanding between the parties that an accident involving multiple parties would still constitute a single accident. *See Haulers Ins. Co., Inc. v. Wyatt*, 170 S.W.3d 541, 546 (Mo. Ct. App. 2005) ("An automobile collision between two vehicles that produces multiple injuries does not lead to the conclusion that there were multiple accidents, but rather one 'accident' that produced injuries arising from that occurrence."). This is consistent with the "cause" approach, in which the negligent act of the Wilkens driver caused the chain of events from which all of the injuries flowed. *See Kansas Fire & Cas. Co. v. Koelling*, 729 S.W.2d 251, 253 (Mo. Ct. App. 1987) ("Applying the *cause* approach to the facts in this case," in which two collisions took place almost

simultaneously and the insured never had a chance to regain control of his car, "it is clear that only one accident occurred."). Thus, for purposes of interpreting the limit of coverage in this case, I conclude that only one accident occurred.

Even acknowledging that there was only one accident, the plaintiffs next argue that the contract does not unambiguously limit coverage on that ground. Rather, they argue that because each of the plaintiffs are separate insureds, and because there were three underinsured motor vehicles involved in the accident, they are each entitled to three separate coverages under this policy.

Plaintiffs rely on the "coverage" section of the underinsured motor vehicle endorsement for their argument. They focus on the singular use of "*the* insured," and the ability to recover from the owner or driver of "*an* underinsured motor vehicle," again in the singular. From this language, the plaintiffs argue that there are separate coverages for each "insured" and for each "vehicle." Even if this interpretation of that single paragraph is correct, it is inappropriate to analyze a single paragraph in isolation when interpreting an insurance contract. *See Ritchie*, 307 S.W.3d at 135 (stating that courts "should not interpret policy provisions in isolation but rather evaluate policies as a whole"). The contract also contains a "limit of insurance" paragraph, which unambigously places a limit on the amount of underinsured motorist coverage available under the policy. That paragraph clearly illustrates that even if the plaintiffs are correct that they each have separate

claims, and even if they are correct that they have claims against each of the underinsured drivers, that maximum limit will still apply. Reading the two paragraphs together, rather than the coverage paragraph in isolation, demonstrates that the limit applies even with multiple insureds and multiple vehicles. Therefore, the only issue left is the limit of underinsured motorist coverage available under the policy.

As discussed above, the policy's declaration shows a limit of $500,000 for underinsured motorist coverage, as does the endorsement called "Missouri Underinsured Motorists Coverage." However, the other endorsement, requiring a selection or rejection of underinsured motorist coverage, was left blank.[1] By stating that the insured "may select a limit of Underinsured Motorist Coverage lower than the bodily injury liability coverage limit in the policy," this endorsement appears to grant the insured the option of selecting lower coverage, while necessarily implying that the default coverage limit for underinsured

---

[1] Defendant's argument that the selection form completed one month after the accident took place is somehow part of the contract is directly contrary to Missouri law. Mo. Rev. Stat. § 379.195.2 states: "No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void." Their argument that this statute applies only to full cancellations or annulments construes its terms too narrowly. *See, e.g.*, *Am. Sur. Co. of N.Y. v. Williford*, 243 F.2d 494, 498 (8th Cir. 1957) ("Under the Missouri statute, . . . the insured and the insurer could not, subsequent to the accident, either by voluntary agreement or collusive action, *impair any claim* of the party injured by the accident against the insurer. The rights of the injured party under the statute accrue on the date of the accident." (emphasis added)). Because this later form attempts to impair the claims of the plaintiffs in this case, it is not relevant to this case as it was not a valid part of the insurance contract on the date of the accident.

motorists is the bodily injury liability coverage limit. Thus, there is an inconsistency between the form policy – which provides for a limit of $500,00 – and the selection endorsement form – which provides for the default limit of $2,000,000.

"An insurance contract includes the declarations, the form policy, and any endorsements and definitions." *Christensen v. Farmers Ins. Co., Inc.*, 307 S.W.3d 654, 658 (Mo. Ct. App. 2010). Endorsements and language in the body of the policy that seem inconsistent "should be construed together unless they are in such conflict they cannot be reconciled." *Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 37 (Mo. Ct. App. 2008). The declarations page of an insurance contract controls if it "clearly communicates the coverage provided by the insurance contract, and the other policy provisions neither expressly change the coverage nor 'reflect a different intention than that clearly expressed on the declarations page.'" *Id.* (citing *Jackson v. Gen. Accident Ins. Co.*, 720 S.W.2d 428, 429 (Mo. Ct. App. 1986)). On the other hand, "[i]f the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement." *Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193, 198 (Mo. 1977) (en banc).

To the extent that the conflicting endorsement and policy language cannot be reconciled – as they each mandate vastly different coverage limits – the coverage

limit for underinsured motorists is ambiguous. To hold that the blank endorsement form does not create an ambiguity would necessarily mean that the endorsement form is completely useless. Such an interpretation is contrary to Missouri law regarding insurance contracts. *See Dibben*, 261 S.W.3d at 556 (requiring courts to "avoid an interpretation that renders some provisions useless or redundant"). It is also unsupported by the facts in this case; if the form is completely useless, then there would have been no purpose for obtaining the completed form by Rollet Bros. in December.

Defendant argues that the parties intended a $500,000 limit for underinsured motorist coverage, but the policy does not unambiguously demonstrate that intent. The failure to execute the selection form raises doubt as to the parties' understanding of the coverage limit. Because the policy is ambiguous, I must interpret its terms in favor of the insured. Therefore, I find that the maximum limit for underinsured motorist coverage is $2,000,000, the bodily injury liability coverage limit under the policy.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for partial summary judgment [#26] is denied.

The parties are reminded that the Case Management Order entered on November 23, 2010 remains in effect, and this case remains on the trial docket beginning March 26, 2012.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of December, 2011.