UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA MUNROE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:10CV1942 CDP |
| ) | |
| CONTINENTAL WESTERN ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Joshua Munroe was employed as a driver for a trucking company when he was involved in a serious accident. He and his wife brought this suit seeking compensation pursuant to the underinsured motorist provisions in his employer's insurance policy, after the insurance policy that covered the truck drivers responsible for the accident failed to fully compensate plaintiffs for the injuries. Defendant Continental Western Insurance Company filed a motion for partial summary judgment, seeking a declaration that the limit of underinsured motorist coverage under the Munroes' policy is $500,000. On December 5, 2011, I denied that motion, holding that the insurance policy was ambiguous and that the underinsured motorist coverage limit was therefore $2,000,000. Continental Western now requests that I reconsider that order denying summary judgment and instead hold that the policy limits underinsured motorist coverage to $500,000.

Because Continental Western has not demonstrated a sufficient basis for altering or amending my Order, I will deny the motion to reconsider.

## Background

Joshua Munroe was employed as a truck driver by Rollet Bros. Trucking Company and insured through its policy with Continental Western.  On November 6, 2006, he was involved in a multi-truck accident involving drivers employed by Wilkens Trucking Company.  Munroe suffered injuries for which he has incurred medical bills in excess of $550,000.  In a separate suit for negligence against the other truck drivers involved in the accident, the Munroes accepted a settlement from the Wilkens drivers' insurance company in the amount of $1,000,000, the maximum coverage limit under that policy.  In this action, the Munroes seek additional compensation from Continental Western pursuant to the underinsured motorist provisions in their own policy.  On August 12, 2011, Continental Western filed a motion for partial summary judgment, seeking a declaration that its maximum coverage for underinsured motorists is $500,000.

The insurance policy at issue contains a schedule of coverages listing a bodily injury liability limit of $2,000,000.  It also shows, among other things, an underinsured motorist coverage limit of $500,000.  An endorsement to the policy

entitled "Selection/Rejection of Underinsured Motorist Coverage"[1] contains the following language:

> Under Missouri Insurance Law (379.203), Underinsured Motorist Coverage is optional. The insured named in the policy may select a limit of Underinsured Motorist Coverage *lower than the bodily injury liability coverage limit* in the policy, but not less than the state financial responsibility limit or the insured named in the policy may choose to reject Underinsured Motorist Coverage.

(Emphasis added). The insured must select one of the following choices: to reject underinsured motorist coverage, to purchase underinsured motorist coverage at the state limit, or to purchase underinsured motorist coverage of a specific amount, which may be less than the policy bodily injury limit (here $2,000,000). In the copy of the insurance policy attached to defendant's motion for summary judgment, this form was blank. However, defendants attached a completed version of this form to its reply memorandum, which showed a selection of $500,000 in underinsured motorist coverage, dated December 8, 2006.

I found that, under Missouri law, the blank form created an ambiguity that must be construed in favor of the insureds, the Munroes. I therefore denied summary judgment, concluding that the maximum amount of coverage under the

---

[1] In its motion, Continental Western argues that this form is not an endorsement, but rather a form that is intended to be blank and that allows the insured to provide information that may be used to issue an endorsement at a later date. However, on the declarations page, the first document listed as an "endorsement" to the policy is CW1796 (01-01), which is the document number listed on the bottom of the underinsured motorist coverage selection form. I will therefore consider this form an endorsement to the policy.

policy for underinsured motorists is $2,000,000, the policy's maximum bodily injury liability limit.

## Discussion

Under Federal Rule of Civil Procedure 54(b), an interlocutory order "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and responsibilities." Fed. R. Civ. P. 54(b). Summary judgment motions are interlocutory in nature, and may be reconsidered and revised up until the time a final judgment is entered. *Well's Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 336 F. Supp. 2d 906, 909 (N.D. Iowa 2004). A district court may, in its discretion, reconsider an interlocutory order to "correct any clearly or manifestly erroneous findings of fact or conclusions of law." *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854 (S.D. Iowa 2008) (internal quotation marks and citations omitted).

In the motion to reconsider, Continental Western argues that the court should consider extrinsic evidence to resolve any ambiguity caused by the blank underinsured motorist selection form. In support of that motion, Continental Western provides affidavits and other insurance documents, arguing that those documents unambiguously demonstrate that the policy's limit for underinsured motorist coverage is $500,000.

Continental Western relies on the Missouri Court of Appeals's decision in *State Farm Mut. Auto. Ins. Co. v. Esswein*, 43 S.W.3d 833 (Mo. Ct. App. 2000), to support its argument that the court should consider extrinsic evidence to resolve any ambiguity before resorting to other rules of contract interpretation. In that case, the court considered a car rental agreement signed by the insured as evidence of the coverage allowed by an accompanying liability insurance provided by the rental agency. *Esswein*, 43 S.W.3d at 842-44.

The decision by the Missouri Court of Appeals in *Esswein*, however, is contrary to the strong precedent under Missouri law of adhering to the doctrine of *contra proferentem* when confronted with an ambiguous insurance contract. In the context of insurance contracts specifically, that doctrine requires a court to construe ambiguous provisions of the contract against the drafter, usually the insurance company, and thereby in favor of the insured. *See Burns v. Smith*, 303 S.W.3d 505, 509-10 (Mo. 2010). The court in *Esswein* stated specifically that its "opinion is limited to the unique factual situation" presented in that case, and it did not alter "the principles underlying the doctrine of *contra proferentem* as applied to insurance contracts." *Esswein*, 43 S.W.3d at 844.

A later opinion by the Missouri Court of Appeals that declined to consider extrinsic evidence to resolve an ambiguity distinguished *Esswein* based on its "unique factual situation." *See Williams v. Silvola*, 234 S.W.3d 396 (Mo. Ct. App.

2007).  First, the *Williams* court explained that unlike *Esswein*, the parties in its case both presented plausible interpretations of the insurance policy.  *Id.* at 406.  Here, both Continental Western and the Munroes have presented plausible interpretations of the insurance contract, Continental Western providing an explanation supporting a coverage limit of $500,000 and the Munroes providing an explanation supporting a limit of $2,000,000.  Second, the *Williams* court clarified that in *Esswein*, the rental agreement considered by the court, rather than the insurance policy itself, was the only document ever viewed by the insured, while in *Williams*, the policies at issue were the only documents ever actually viewed and signed by the plaintiffs.  *Id.* at 406.  Likewise, in this case, the Munroes challenge the insurance policy itself, and they never viewed any other documents that would have given them different impressions of their coverage under the policy.  Finally, the *Williams* court pointed out that the *Esswein* decision was expressly limited to its unique factual situation and does not alter the "long line of cases affording the insured a favorable interpretation of ambiguous provisions when the insured's interpretation is plausible and supported by the other language in the policy or relevant extrinsic evidence."  *Id.* at 406 (quoting *Esswein*, 43 S.W.3d at 844).

Like the Missouri Court of Appeals in *Williams*, I believe *Esswein's* reliance on extrinsic evidence must be limited to the "unique factual situation"

presented in that case.  I will follow the Missouri courts' longstanding adherence to the doctrine of *contra proferentem*, and so will not consider extrinsic evidence.

Continental Western argues that the policy is not actually ambiguous because the declarations, schedule of coverages, and underinsured motorist endorsement all reflect a coverage limit of $500,000.  Further, Continental Western argues that because the selection form was completed in December with the same $500,000 limit, the selection form is actually consistent with the $500,000 limit appearing elsewhere in the policy.  Continental Western argues that the blank form is intended to be blank at the time of the policy's issuance in order to require the insureds to more clearly express their intent to select a lower limit for underinsured motorist coverage, so the fact that it was blank when issued does not create an ambiguity.

However, Continental Western concedes in its motion that "had the insured never completed the form, there could be an ambiguity with respect to the amount of coverage, and in that case, the Plaintiffs' argument for $2 million in limits may be more plausible." (Doc. #55, at 12).  Additionally, it concedes that "[i]f Rollet Bros., after the incident, had decided not to fill out the form, there could be a dispute as to the intent of the parties with respect to the amount of coverage each thought should be available under the policy." (Doc. #55, at 7).  All that matters in this analysis, however, is whether the policy was ambiguous at the time that the

- 7 -

Munroes' right to collect under that policy attached, which, under Missouri law, is the date of the occurrence. *See Shelter Mut. Ins. Co. v. Baker*, 753 S.W.2d 646, 649 (Mo. Ct. App. 1988).

At the time the Munroes' right to collect under the policy attached – November 6, 2006, the date of the accident – the selection form had not yet been completed.  By Continental Western's own admission, the policy was ambiguous at that point because the insured had never filled out the selection form, and the policy therefore only contained a blank form.  The fact that Rollet Bros. completed the form more than a month after the incident is not relevant to a determination of whether the policy was ambiguous at the time that the Munroes became entitled to collect proceeds under that policy.

Because I conclude that the policy was ambiguous at the time of the accident, I will resort to the rule of *contra proferentem* to resolve that ambiguity against the drafter of the contract, Continental Western, and in favor of the insureds, Joshua and Tiffany Munroe.  Therefore, I reaffirm my earlier holding that the maximum limit for underinsured motorist coverage is $2,000,000, the bodily injury liability coverage limit under the policy.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to reconsider [#55] is DENIED.

**IT IS FURTHER ORDERED** that counsel shall meet and confer and attempt to agree on a schedule for the remainder of work to be done on this case. They shall file a joint proposed schedule no later than **October 24, 2012**, or, if they are unable to agree on all aspects of a schedule, they shall file a joint report explaining each side's proposal.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2012.